UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE DERNIS and <br> MARIA DERNIS, <br> <br> Plaintiffs, <br> <br> v. <br> <br> FEDERAL DEPOSIT INSURANCE <br> CORPORATION, in its corporate capacity, and <br> FEDERAL DEPOSIT INSURANCE <br> CORPORATION, as receiver for Premier Bank, <br> <br> Defendants. | No. 21-cv-3157 <br> <br> Judge Marvin E. Aspen |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs George and Maria Dernis have sued the Federal Deposit Insurance Corporation, both in its corporate capacity ("Corporate") and in its capacity as receiver for Premier Bank ("Receiver") (collectively "Defendants"), alleging that they have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and committed various common law torts. (*See generally* First Amended Complaint and Jury Demand ("Amended Complaint") (Dkt. No. 37).)[1] Corporate and Receiver, which are legally distinct entities represented by separate counsel, have both moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) (for lack of subject matter jurisdiction) and 12(b)(6) (for failure to state a claim upon which relief may be granted). (Motion of the Federal Deposit Insurance Corporation, in its Corporate Capacity, to Dismiss the First Amended Complaint, and Incorporated Memorandum of Law in Support ("Corporate Motion") (Dkt. No.

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

42); Motion of the Federal Deposit Insurance Corporation, in Its Capacity as Receiver for Premier Bank, to Dismiss the First Amended Complaint, and Incorporated Memorandum of Law in Support ("Receiver Motion") (Dkt. No. 43).) For the reasons stated below, the motions to dismiss are granted.

## BACKGROUND

We accept the following well-pleaded factual allegations in the Amended Complaint and its exhibits as true for purposes of the motions to dismiss. *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

The Dernises owned a chain of grocery stores. (Amended Complaint ¶ 42.) They received financing from Premier Bank to expand their business in 2004. (*Id.* ¶ 47.) Thus began a long and contentious relationship, during which Premier Bank and its officers allegedly engaged in an intricate, nine-step fraudulent scheme against the Dernises. (*Id.* ¶¶ 56–123.) Over the years, and relying on myriad alleged false pretenses, the Dernises took out loans from Premier Bank, secured by collateral that included equity stakes in their businesses and their personal real estate. (*Id.* ¶¶ 75, 85, 95, 125, 127, 133, 138.) Premier Bank made claims against the Dernises' collateral, and a flurry of lawsuits ensued in both directions. (*Id.* ¶¶ 122–23, 153–56.)

Ultimately, Premier Bank failed, and Receiver was appointed as receiver, succeeding by operation of law to the bank's "rights, titles, powers, and privileges." (*Id.* ¶ 28); 12 U.S.C. § 1821(d)(2)(A). The Dernises claim that despite being aware of the fraudulent nature of the loans from Premier Bank to the Dernises, Receiver continued to collect on the loans and later sold them to Amos Financial, LLC. (*Id.* ¶¶ 22–30, 195.) The Dernises also claim that Receiver improperly claimed a "reversionary interest" on some of the collateral. (*Id.* ¶ 220.)

In January 2021, the Dernises filed an administrative claim with Receiver disputing its claim to a "reversionary interest" in some of the collateral described above. Exhibit 1 to Amended Complaint (Dkt. No. 37-1).) The Dernises nowhere claimed that Receiver was liable under RICO. (*See generally id.*) The FDIC disallowed the claim in April 2021 (Exhibit 2 to Amended Complaint (Dkt. No. 37-2)), and the Dernises filed this action in June 2021. (Verified Complaint and Jury Demand (Dkt. No. 1).) Corporate and Receiver moved to dismiss (Dkt. Nos. 20, 28), and Corporate moved for sanctions (Dkt. No. 23). In response, the Dernises amended their complaint. (Amended Complaint (Dkt. No. 37).)

The Dernises' Amended Complaint asserts seven counts. Counts I and II of the Amended Complaint allege that Defendants violated and conspired to violate RICO. (*Id.* ¶¶ 270–87.) The remaining counts assert several tort claims against Defendants: conversion (Count III) (*id.* ¶¶ 288–93), invasion of privacy and intrusion upon seclusion (Count IV) (*id.* ¶¶ 294–304), intentional infliction of emotional distress (Count V) (*id.* ¶¶ 305–08), negligence and negligent infliction of emotional distress (Count VI) (*id.* ¶¶ 309–18), and civil conspiracy (Count VII) (*id.* ¶¶ 319–29.)

Corporate and Receiver have again moved to dismiss. Corporate also renewed its sanctions motion (Dkt. No. 53), which the judge presiding before the matter was reassigned to us struck without prejudice pending ruling on the motions to dismiss. (Dkt. No. 55.) The Dernises request oral argument. (Plaintiffs' [Second Corrected] Joint Response and Brief in Objection to Defendants' Motions to Dismiss ("Resp.") (Dkt. No. 50) at 1.) We can resolve Defendants' motions on the briefs, however, and therefore deny this request. *See* N.D. Ill. L.R. 78.3 ("Oral argument may be allowed in the court's discretion.").

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges our subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If, as here, a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—we "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," we employ "the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)," described below. *Id.* at 174. If, however, the defendant contests the truth of the jurisdictional allegations—a factual challenge—we may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *See id.* at 173; *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, not its merits.[2] *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such motions, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-

---

[2] The Dernises insist that Defendants have converted their motions to dismiss into motions for summary judgment under Federal Rule of Civil Procedure 56 by "attach[ing] exhibits and ma[king] arguments outside the scope of the pleadings." (Resp. at 5.) Because we do not consider any of the materials attached to Defendants' motions, these motions are not converted to motions for summary judgment. *See* Fed. R. Civ. P. 12(d) (requiring conversion only if a court does not exclude extraneous materials).

4

pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). We may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A facially plausible complaint need not give "detailed factual allegations," but it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. These requirements ensure that a defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

## ANALYSIS

### I. Subject Matter Jurisdiction

We must first determine whether we have subject matter jurisdiction. Defendants argue that we lack subject matter jurisdiction because Congress has not waived their sovereign immunity against either RICO or common-law tort claims. (Corporate Motion at 6–7; Receiver Motion at 12.) We find that Congress waived Defendants' sovereign immunity against RICO claims. Congress did not, however, waive Defendants' sovereign immunity against the Dernises' remaining common-law tort claims, and we therefore dismiss those claims for lack of subject matter jurisdiction. Receiver, but not Corporate, also argues that we lack jurisdiction because the Dernises did not administratively exhaust their RICO claims, and we agree. We therefore have jurisdiction to consider only the Dernises' RICO claims against Corporate.

### A. Sovereign Immunity

The United States government and its agencies enjoy "sovereign immunity," meaning they cannot be sued without their consent. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Congress may waive a federal agency's immunity by statute, but such waiver must be "unequivocally expressed." *Kuznitsky v. United States*, 17 F.3d 1029, 1031 (7th Cir. 1994) (citing *United States v. Testan*, 424 U.S. 392, 399 (1976)). We lack subject matter jurisdiction over claims against the federal government or its agencies unless Congress has waived sovereign immunity. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

### 1. RICO Claims (Counts I and II)

FDIC first argues that Congress has not waived its sovereign immunity against RICO claims. (Corporate Motion at 7; Receiver Motion at 12.) The Dernises respond that (1) Congress waived the FDIC's sovereign immunity against all claims by authorizing it to "sue and be sued" in its own name in the Federal Deposit Insurance Act ("Organic Statute"), *see* 12 U.S.C. § 1819(a); and (2) FDIC's conduct was "so egregious[]" that they "should be held liable, as an agency, for a RICO conspiracy." (Resp. at 17–18.) The latter argument is a non-starter. There is no "egregiousness" exception to sovereign immunity; only the sovereign's consent to be sued matters. *Mitchell*, 463 U.S. at 212.

We agree with the Dernises, however, that the Organic Statute's sue-and-be-sued clause waived the FDIC's sovereign immunity against RICO claims. The Supreme Court has held that "[b]y permitting [an agency] to sue and be sued, Congress effected a 'broad' waiver of [the agency's] immunity from suit." *Meyer*, 510 U.S. at 475 (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992)). "[S]ue-and-be-sued waivers are to be liberally construed,

6

notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign." *Id.* at 480 (citing *Nordic Vill.*, 503 U.S. at 34). To implicitly limit a sue-and-be-sued clause, there must be "a clear showing that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense." *Id.* (quoting *Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 245 (1940)).

Congress enacted just such a waiver in the Organic Statute, allowing Defendants to "sue and be sued, and complain and defend, by and through its own attorneys, in any court of law or equity, State or Federal." 12 U.S.C. § 1819(a); (Resp. at 17.) This is materially indistinguishable from the sue-and-be-sued clause the Supreme Court held to constitute a broad waiver of sovereign immunity in *Meyer*. 510 U.S. at 475 & n.3; *see also Far W. Fed. Bank, S.B. v. Director, Off. of Thrift Supervision*, 930 F.2d 883, 888–89 (Fed. Cir. 1991) (holding FDIC's sue-and-be-sued clause generally waived sovereign immunity and finding no exception for contractual claims). We have found, and the FDIC has cited, no relevant statutory limitation on that waiver that would exclude RICO claims. And the FDIC has not made the "clear showing" that would allow us to implicitly limit the waiver.[3]

The FDIC cites several appellate decisions outside the Seventh Circuit holding that plaintiffs cannot sue the federal government under RICO. (Corporate Motion at 6–7; Receiver Motion at 12.) But most of these cases hold that RICO claims against the government fail on the

---

[3] The Dernises did themselves no favors by failing to cite a single case on this issue. (Resp. at 17–18.) But they did identify the Organic Statute's sue-and-be-sued clause (*id.*) and, in any event, we "have an independent obligation to ensure that subject matter jurisdiction exists." *Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 970 (N.D. Ill. 2015)

merits, not that sovereign immunity bars them. *E.g.*, *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (holding that federal government is definitionally incapable of engaging in "racketeering activity"); *see also McNeily v. United States*, 6 F.3d 343 (5th Cir. 1993) (applying *Berger* to FDIC). Only *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 23 (2d Cir. 1989) and *Deluxe Delivery Service v. United States*, 53 F. App'x 554 (Fed. Cir. 2002) (unpublished), held that the federal government had not waived its sovereign immunity against RICO claims. But the United States federal government was the defendant in those cases, not, as here, an agency with an organic statute containing a sue-and-be-sued clause. Those cases are therefore inapt.

### 2. Tort Claims (Counts III–VII)

The Dernises' common-law tort claims are a different story. The FDIC argues that these claims must be brought under the Federal Tort Claims Act ("FTCA"), which requires plaintiffs to name the United States, not any agency, as the defendant. (Corporate Motion at 8–10; Receiver Motion at 9–10.) The Dernises do not dispute that their common-law tort claims must be brought under the FTCA, and their Amended Complaint appears to invoke the statute.[4] (Amended Complaint ¶ 5). Thus, we proceed on the basis that Counts III through Counts VII are governed by the FTCA. The FTCA waives the federal government's sovereign immunity in tort by granting federal district courts

> exclusive jurisdiction of civil actions on claims *against the United States*, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant

---

[4] Paragraph 5 of the Amended Complaint asserts that "Defendants have waived jurisdiction pursuant to 28 U.S.C. §[] 1356(b)(1)," a non-existent subsection of the statute conferring jurisdiction over non-admiralty seizures. 28 U.S.C. § 1356. This was a clear scrivener's error, because 28 U.S.C. § 1346(b)(1) is the FTCA's waiver of sovereign immunity.

8

>in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added). As this provision makes clear, we have jurisdiction over FTCA claims brought against the United States. *Id.* Claims against any other party are beyond the FTCA's waiver of sovereign immunity and thus beyond this Court's subject matter jurisdiction. *Brownback v. King*, 141 S. Ct. 740, 746, 749 (2021) (stating that an FTCA claim must be against the United States for subject matter jurisdiction to exist); *Atkinson v. Skyline Servs., Inc.*, No. 2:18-cv-00491-JMS-MJD, 2018 WL 6674311, at *2 (S.D. Ind. Dec. 18, 2018) (dismissing, for want of subject matter jurisdiction, an FTCA claim brought against an agency of the federal government instead of the United States).

The Dernises' invocation of the Organic Statute's sue-and-be-sued clause does not work here. (Resp. at 18.) The FTCA contains an express limitation on any Organic Statute's sue-and-be-sued clause: "The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive." 28 U.S.C. § 2679(a); (Corporate Motion at 8–10; Receiver Motion at 9–10.) The Dernises do not dispute that all their common-law tort claims are "cognizable under section 1346(b)," meaning covered by the FTCA. (Resp. at 18–20.) Because the Dernises' FTCA claims are asserted against the FDIC, not the United States, we lack subject matter jurisdiction over these claims.

Accordingly, Counts III through VII are dismissed without prejudice.

### B.     Exhaustion

Receiver argues that the RICO claims against it were not exhausted, which is yet another jurisdictional prerequisite under the Financial Institutions Reform, Recovery, and Enforcement

9

Act of 1989 ("FIRREA").[5] (Receiver Motion at 13–15); *see* 12 U.S.C. § 1821(d)(13)(D)(ii) ("Except as otherwise provided in this subsection, no court shall have jurisdiction over . . . any claim relating to any act or omission of [any depository] institution [for which the FDIC has been appointed receiver] or the [FDIC] as receiver."); *Miller v. FDIC*, 738 F.3d 836, 844 (7th Cir. 2013) ("FIRREA contains a clear jurisdictional bar against suits seeking payment of claims against failed banks taken over by the FDIC."); Receiver further explains that exhaustion is claim-specific, and that the Dernises' 2021 administrative claim did not identify any RICO claims, making the RICO claims unexhausted. (Receiver Motion at 14–15 (collecting cases)); *cf., e.g.*, *Ravenswood, LLC v. FDIC*, No. 10 C 1064, 2010 WL 4877557, at *3 (N.D. Ill. Nov. 23, 2010) ("[T]he exhaustion requirement is satisfied only where the FDIC has received 'fair notice of the facts and legal theories on which a claimant seeks relief from the failed institution.'" (quoting *Brown Leasing Co. v. FDIC*, 833 F. Supp. 672, 675 (N.D. Ill. 1993))). The Dernises characterize this well-supported argument as "ridiculous and frivolous" because the Dernises filed an administrative claim in January 2021. (Resp. at 22; Exhibit 1 to Amended Complaint.) But the Dernises make no attempt to argue that the administrative claim they filed exhausted their *RICO* claims. (Resp. at 22.)

Far from "ridiculous and frivolous," Receiver's argument is correct. We lack jurisdiction over any claims that were not first exhausted through the FIRREA process. 12 U.S.C.

---

[5] "Although exhaustion is an affirmative defense, a plaintiff can plead himself out of court where, for example, he 'admits that he did not exhaust his administrative remedies and pursue further administrative appeals of the partial denial of his claim.'" *Tuhey v. Ill. Tool Works, Inc.*, No. 17 C 3313, 2017 WL 3278941, at *8 (N.D. Ill. Aug. 2, 2017) (quoting *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002)). Here, the Amended Complaint itself alleges all pertinent facts about exhaustion and attaches the administrative claim as an exhibit. (Amended Complaint ¶¶ 13–14 & Exhibits 1–2.) We can fully address administrative exhaustion from the Amended Complaint and its exhibits.

§ 1821(d)(6)(B) (permitting judicial review of FDIC denial of administrative claims); *id.* § 1821(d)(13)(D) (divesting jurisdiction over claims against FDIC as receiver for failed bank except as otherwise provided in FIRREA); *Ravenswood, LLC*, 2010 WL 4877557, at *3. The Dernises claimed in the FIRREA process that Receiver wrongfully claimed a reversionary interest in some of the Dernises' collateral, sold the Dernises' debt to Amos knowing that it was fraudulent, and "failed to follow FIRREA." (Dkt. No. 37-1 at 1, 4, 13–14.) They mentioned RICO exactly once: they remarked that they sued Amos for RICO violations in 2015, not that Receiver had violated RICO. (*Id.* at 15.) The Dernises now sue Receiver for racketeering based on bank fraud, mail fraud, wire fraud, and collecting "unlawful debt," which under RICO's statutory definition means, essentially, that Receiver is running a gambling or loan-shark business. (Amended Complaint ¶¶ 231–287); 18 U.S.C. § 1961(6). Because these are not claims that the Dernises identified during the FIRREA process, we lack jurisdiction under 12 U.S.C. § 1821(d)(13)(D) and dismiss them without prejudice under Rule 12(b)(1). *Ravenswood, LLC*, 2010 WL 4877557, at *4.

## II.     Merits of RICO Claims (Counts I and II)

All that remains are the merits of the Dernises' RICO claims against Corporate. Corporate argues that (1) the Dernises cannot state a RICO claim against the FDIC because it is neither a "person" nor capable of engaging in a "pattern of racketeering," as those terms are defined in the statute; and (2) the claims are untimely under a four-year statute of limitations. (Corporate Motion at 6–7.) The Dernises do not respond to these arguments. (*See* Resp. at 17–18, 21–22.)

We agree with Corporate and what appears to be every court that has considered the issue that the federal government and its agencies are definitionally incapable of violating or conspiring to violate RICO. RICO prohibits various acts involving "racketeering activity," as

11

well as conspiracy to engage in those acts. *See* 18 U.S.C. § 1962(a)–(d). The statute defines "racketeering activity" as a host of acts that may be "chargeable," "indictable," or "punishable" as violations of various "state and federal criminal provisions." *Berger*, 933 F.2d at 397 (citing 18 U.S.C. § 1961(1)). Because the FDIC is a federal agency, it is not "subject to state or federal criminal prosecution." *Id*. And, as such, it cannot engage in activity that is "chargeable," "indictable," or "punishable" for state or federal crimes, which means it is legally incapable of engaging in "racketeering activity" as that term is defined under RICO. *Id*. Therefore, as a matter of law, the FDIC is not subject to RICO liability. *Id*. ("[I]t is clear that there can be no RICO claim against the federal government."); *McNeily*, 6 F.3d at 350 ("[W]e reject [the] contention that the FDIC may be sued under the RICO statute.") (citing *Berger*).

Without making any argument that Corporate has engaged in or conspired to commit "racketeering activity," the Dernises pivot to arguing that Corporate violated RICO by collecting and conspiring to collect "unlawful debt[s]." 18 U.S.C. § 1962(a)–(c). (Resp. at 21–22.) In particular, the Dernises claim that this case involves the collection of an unlawful debt because the FDIC "asserted a reversionary interest." (Amended Complaint ¶ 275.) But "unlawful debt," as defined by RICO, does not refer to a debt that violates *any* law; it refers to a debt that was "incurred or contracted" in illegal gambling activity, or one that is unenforceable "because of the laws relating to usury." 18 U.S.C. § 1961(6); *see Cocroft v. HSBC Bank USA, NA*, No. 10 C 3408, 2011 WL 1630142, at *1 (N.D. Ill. Apr. 27, 2011) (dismissing RICO claim predicated on collection of unlawful debt where plaintiffs failed to allege that the debt was incurred through illegal gambling or carried a usurious interest rate). And nothing in the Amended Complaint suggests that the FDIC's assertion of a reversionary interest, even if improper, relates in any way to either illegal gambling or usury.

12

Finally, because the Dernises do not respond to any of Corporate's arguments on the sufficiency of their RICO claims, they have waived the issue. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466–67 (7th Cir. 2010) (holding that failure to respond to argument results in waiver). Because the waived arguments are all "supported . . . by pertinent legal authority," *id.* at 467, we accept the following uncontested arguments. First, an agency of the government is not a "person" under RICO, *see Bonanno Organized Crime Family*, 879 F.2d at 23. Second, the Dernises' RICO claims accrued in 2012 and therefore were untimely under the four-year statute of limitations. (Amended Complaint ¶ 155 (alleging that the Dernises sued Premier Bank for predicate acts underpinning their RICO claims in 2012)); *Rotella v. Wood*, 528 U.S. 549, 552 (2000) (holding four-year limitations period applies to RICO claims). Based on these further conceded arguments, the Dernises thus could not establish liability even if they could prove that Corporate collected an unlawful debt. (Corporate Motion at 6–7; Corporate Reply at 4.)

Thus, Counts I and II are dismissed with prejudice against Corporate because there is no plausible way that the Dernises can cure the defect—that Corporate is definitionally incapable of violating the statute it is accused of violating—through an amendment. *Campos v. Cook Cnty.*, 932 F.3d 972, 977 (7th Cir. 2019) ("[A] district court need not grant leave to amend if there doesn't seem to be a plausible way to cure the defects.").

## CONCLUSION

For the reasons stated above, Corporate's Motion to Dismiss (Dkt. No. 42) and Receiver's Motion to Dismiss (Dkt. No. 43) are granted. Counts I and II against Corporate are dismissed with prejudice under Rule 12(b)(6). Counts I and II against Receiver are dismissed without prejudice under Rule 12(b)(1). Counts III through VII against both Defendants are dismissed without prejudice under Rule 12(b)(1).

The Dernises may file an amended complaint on or before October 14, 2022, if they believe in good faith that they are able to do so in compliance with this Order and their Rule 11 obligations. It is so ordered.

                                                                                          _____
                                                                                          Honorable Marvin E. Aspen
                                                                                          United States District Judge

Dated: September 30, 2022